HIRAM W. SIBLEY, as Survivor, etc., v. CHAUNCEY G. STARK-
WEATHER.

*Supreme Court, Fifth Department, General Term, June 22, 1889.*

1. *Partnership. Guaranty.*—A partner who gives to his firm an instru-
ment in writing, indemnifying them against all loss or damage by
reason of certain advances made by them on his individual
liabilities, and afterwards transfers his interest in the firm, though
without reservation or recourse, is not thereby released from his
contract of guaranty.

2. *Same. Statute of limitations.*—A judgment against the firm on its
undertaking, determines its liability, a cause of action then accrues
in favor of the firm on the contract of indemnity, and the statute
of limitations begins to run in favor of the partner from the date
of the said judgment, though such judgment has never been paid.

Motion by the plaintiff for a new trial on a case and ex-
ceptions ordered to be heard in the first instance at general
term, judgment in the meantime being suspended.

*J. C. Smith*, for motion.

*W. F. Coggswell*, opposed.

DWIGHT, J.—The action was on two instruments in
writing, by which the defendant agreed to guarantee and
indemnify the firm of Hiram Sibley & Co., of which the
plaintiff is survivor and of which the defendant was then a
member, against loss by reason of payments made by them
on certain liabilities of one Briggs. The circumstances of
the transaction involved, so far as they are disclosed by a
record somewhat scantily made up, were briefly as follows:
The copartnership of Hiram Sibley & Co., consisting of
Hiram Sibley, Isaac S. Averill and the defendant, Stark-
weather, was formed on the 12th day of September, 1878,
and on the same day purchased from Charles W. Briggs
his seed business, which had been carried on by him at

Rochester under the name of Briggs & Bro., together with the stock of seeds and other personal effects belonging to the business. It was provided by the bill of sale that the first moneys to be paid on the purchase price might be applied by the purchasers to pay off the claims of indorsers and lenders holding liens on the seeds and effects purchased, and other creditors of Briggs secured by collaterals. The defendant had been an indorser for Briggs, and notes of the latter were then outstanding bearing his indorsement, and also a note of $2,500 made by John T. Briggs and indorsed by " Briggs & Bro." and the defendant. On the fourteenth day of September, two days after the sale of his business, Briggs made a general assignment, " for the benefit of creditors," to Nathan P. Pond. On the third day of October, Hiram Sibley & Co. advanced money to pay notes indorsed by the defendant, including the $2,500 note of John T. Briggs, upon the defendant's executing the first of the two instruments above mentioned, by which he guaranteed the firm against all loss or damage by reason of such advance.

On the fourteenth of September, the day of the date of his general assignment, but before the execution of that paper, Briggs made a bond and mortgage on a farm in the town of Gates for $5,000, running to Starkweather, which the latter on the 18th day of January, 1879, assigned to the firm. On the last-mentioned day Starkweather executed to the firm the second of the instruments upon which this action is based. It repeats the guaranty to the firm against loss by reason of advances to pay off liens on the property bought by them and " takes all risks in every and any defense or objection that may be made against such payment or the validity of the debts to me (Starkweather), secured by such mortgages as were pledged for the payment of any claim in any form against the said Briggs." It seems that the lien of this mortgage was afterwards cut off by the foreclosure of a prior lien.

It is difficult to see how this mortgage, given after the

bill of sale, could have been regarded as within the provisions of that instrument or how it was covered by the last-mentioned agreement of Starkweather. The latter gives, in his evidence, the only intelligible account which the case contains, of the inception of the mortgage. He says it was given by Briggs to him, for the firm, under an arrangement by the partner Averill, as security for a loan to Briggs which the latter required as a condition of surrendering possession of the business and effects embraced in the purchase; that Averill raised the money for the loan on a joint note of himself and Starkweather, and that the firm afterwards paid that note and he assigned the mortgage to them. If this is the true history of the $5,000 mortgage it was not within the agreement of indemnity any more than it was within the provisions of the bill of sale. But it is unnecessary to discuss the questions peculiar to the mortgage, since the case of the $2,500 note furnishes a sufficient test of the correctness of the disposition which was made of the action at the circuit.

In April, 1879, Pond, the assignee of Briggs, brought an action against the firm to recover the amount unpaid on the purchase, and the defendants answered, setting up among other things the advances made on the $2,500 note and the $5,000 mortgage, as payment, under the terms of the bill of sale, of so much of the purchase-price to be paid by them. The pleadings in that action are not in this record, but the answer does not seem to have pleaded the advances in question as an offset to the plaintiff's demand. The result was a disallowance of these advances as not within the provisions of the bill of sale; and judgment accordingly was recovered against Hiram Sibley & Co. on the eighth day of October, 1881. Hence this action to recover the sum of $7,500, loss and damage sustained by them by reason of the advances in question.

In May, 1879, Averill transferred his interest in the firm to Hiram Sibley. In June, 1881, Starkweather, with the

consent of Hiram Sibley, sold out his interest to Stuart, Barton & Mills, by an instrument in writing which contained the following terms : " The party of the first part doth hereby assign, transfer, sell and convey to the party of the second party all his right, title and interest in the property and assets of the firm of Hiram Sibley & Co. * * * without any reserve or recourse whatever. * * * This agreement and transfer is made subject to the payment by the parties of the second part, and the undertaking by them to pay all firm debts and liabilities, for which the party of the first part is, or may be, liable as one of the members of the said firm."  At the foot of this assignment was the following consent, signed by Hiram Sibley : " The undersigned owner of the remaining two-thirds of the property above-mentioned hereby consents that such assignment may be made, and admits into such copartnership the above-named parties of the second part."  The plaintiffs offered to prove by Hiram Sibley that this consent was given upon the express condition that the liability of the defendant, upon his contracts of indemnity, should not be discharged.

In April, 1883, Barton and Mills sold their interest in the firm to Hiram W. Sibley, and in January of the same year Stuart sold his interest to the two Sibleys.  This action was commenced by them in August, 1886, and, Hiram Sibley having died since the trial, it now proceeds in the name of Hiram W. Sibley, the sole survivor of the firm.

Upon the facts thus stated, we think the plaintiff made a case for recovery upon the guaranty against loss in the payment by the firm of the $2,500 note, and the conclusion turns wholly upon the question whether the defendant was released from his contract of guaranty by the transfer of his interest in the copartnership to Stuart, Barton & Mills. We think he was not.  From the moment of his execution of the instrument of indemnity which embraced the note in question, that instrument became a part of the assets of the

copartnership, in which, it is true, he had an interest, subject to an accounting, as a member of the firm, but upon which he was solely and individually liable. That interest he transferred, with his interest in all the other assets of the copartnership, to Stuart, Barton & Mills, by his assignment without reserve; and upon no principle, as we conceive, was his individual liability to the firm extinguished by the transfer. It is said that the transfer was without recourse as well as without reserve. True, but the recourse which was barred by the contract was recourse by the firm against him as a member of the firm. He was no longer subject to, nor could he thereafter maintain, an action for an accounting to ascertain his interest in or his liability to the firm as a partner, because by his transfer he had parted with that interest (with the consent of his copartner) and been relieved from that liability.

But his liability on the contract of indemnity stood upon another footing. That was a contract upon which he was solely and individually liable, the consideration therefor being for his own individual benefit. It belonged to the copartnership as much as if it had been his individual promissory note contributed by him as his share of the capital; and his interest in it passed to his transferees as fully and unreservedly as his interest in all the other assets of the firm. A case less complicated in its details, but which we conceive is parallel in the principles involved, may be supposed. A and B form a copartnership to deal in commercial paper. B sells to the firm the promissory note of a third party, with his own guaranty of payment. Afterwards, with the consent of A, he transfers his interest in the copartnership to C, "without reserve and without recourse." The maker of the note proves to be worthless, and the firm brings the action on B's guaranty. We apprehend there could be no question of its right to recover; B would have no right to an accounting, because he had transferred his entire interest in the partnership to C. He could

not defend under the terms " without recourse," because he contracted with C only in respect to his partnership interest and liability, and the liability sought to be enforced is individual.

The views suggested are elementary in their character, and, if correct, they obviate much of the discussion had on the argument of the case.

Among the grounds stated of the motion for a nonsuit, aside from those already considered, it was said that the cause of action, if any, relating to the $2,500 note, accrued immediately upon the execution of the first instrument of indemnity, and was therefore barred by the statute of limitations; and, again, that a cause of action in that respect had not yet accrued, because the plaintiffs had not paid the judgment in the action of Pond *v.* Sibley.

The two grounds are evidently inconsistent, and we think neither is tenable. There was a breach of the contract of indemnity as soon as the judgment was recovered, which determined the liability of the plaintiffs (Conner *v.* Reeves, 103 N. Y. 527; 4 N. Y. State Rep. 216); and that was within six years before the commencement of this action.

We think the nonsuit was improperly allowed, and that it should be set aside and a new trial granted.

All concur.